IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SHANTWAUN J TURNER,

     Plaintiff,

v.                       CASE NO. 4:15-cv-334-WS-GRJ

ERNEST GORHAM,

     Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

     This matter is before the Court on ECF No. 62, Defendant Ernest

Gorham's Motion for Summary Judgment. Plaintiff has not filed a response

in opposition to Defendant Gorham's motion for summary judgment and

the time for doing so has expired.[1] The motion for summary judgment is,

therefore, ripe for review. For the reasons explained below, it is

recommended that the motion for summary judgment be granted.

---

[1] Defendant Gorham filed his motion for summary judgment on August 23, 2016. (ECF No. 62.) Accordingly, the Court issued a summary judgment notice to Plaintiff on August 24, 2016, directing Plaintiff to file his response and any evidentiary materials by September 23, 2016. (ECF No. 63.) Plaintiff then filed a notice to the Court and Defendant Gorham advising that he never received the motion for summary judgement. (ECF No. 65.) Defendant Gorham re-served the motion on September 6, 2016. (ECF No. 66.) By November 4, 2016, Plaintiff had not filed a response. Accordingly, the Court directed Plaintiff to show cause by December 5, 2016, as to why the motion for summary judgment should not be granted. (ECF No. 70.) As of the date of this report and recommendation Plaintiff has failed to respond.

# I.  <u>INTRODUCTION</u>

Plaintiff's claims center around his December 1, 2011 arrest, in which Plaintiff was shot twice by law enforcement while being arrested. Following Plaintiff's arrest, he was convicted by a jury on seven counts, including aggravated assault on a law enforcement officer with a firearm and resisting a law enforcement officer with violence. Plaintiff's second amended complaint names three Defendants: (1) Special Agent Patrick Sanford; (2) Sergeant Brian Davis; and (3) Officer Ernest Gorham. (ECF No. 9.) Plaintiff's claims against Defendants Sanford and Davis were dismissed with prejudice on October 4, 2016. (ECF No. 69.)[2] Thus, the only claim remaining in this case is the one against Defendant Gorham.

Plaintiff claimed Agent Sanford and Sergeant Davis used excessive force while arresting Plaintiff by shooting him as he was fleeing. Plaintiff says that Defendant Gorham ("Officer Gorham") contributed to the excessive force by failing to identify defendants as law enforcement

---

[2] The Court determined that Plaintiff's excessive force claim against Defendant Sanford was barred by *Heck v. Humphrey,* 512 U.S. 477 (1994), because if proven, it would necessarily undermine the validity of Plaintiff's conviction for aggravated assault on a law enforcement officer with a firearm. (ECF Nos. 64, 69.) Nonetheless, even if it was not *Heck*-barred, Agent Sanford was entitled to qualified immunity because his actions were not unreasonable under the Fourth Amendment, nor did his actions violate clearly established law. (*Id.*) Likewise, Defendant Davis was entitled to qualified immunity because his actions were not unreasonable under the Fourth Amendment, nor did his actions violate clearly established law. (*Id.*)

officers at the outset.

Officer Gorham requests that the Court enter summary judgment as a matter of law in his favor and dismiss Plaintiff's claims. (ECF No. 62.) In support of his motion, Officer Gorham adopts Sergeant Davis' motion for summary judgment, Sergeant Davis' affidavit, the partial transcripts from Plaintiff's underlying criminal trial, and the judgment entered after the jury verdict in that trial. (*Id.* (citing ECF Nos. 44-1–3, 48–49).)

Pursuant to Fed. R. Civ. P. 56(c),

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>     (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>     (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Furthermore,

> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56( c), the court may:
>     (1) give an opportunity to properly support or address the fact;
>     (2) consider the fact undisputed for purposes of the motion;
>     (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In this case, Plaintiff declined to submit either a response to the motion for summary judgment or any evidentiary materials in opposition to summary judgment. Plaintiff also declined to do so in response to Agent Sanford's and Sergeant Davis' motions for summary judgment. *See* ECF No. 64 at 4–6. Nonetheless, 28 U.S.C. § 1746 provides,

> [w]herever, under any . . . rule, . . . any matter is required or permitted to be supported, evidence, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidence, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated . . . .

Although Plaintiff did not submit any sworn affidavits or other evidentiary materials in opposition to summary judgment, Plaintiff's second amended complaint is signed under penalty of perjury. (ECF No. 9.) Thus, Plaintiff's second amended complaint is properly treated by the Court like a sworn affidavit. *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary.").

Plaintiff's sworn allegations in his second amended complaint, therefore, may be considered in ruling on the motion for summary judgment.[3]

## II. **EVIDENCE**

In December 2010, the State of Florida placed Plaintiff on three years' probation for selling marijuana to an undercover police officer. (ECF No. 9 at 6 ("Compl.")) Plaintiff failed to report to his probation officer in May 2011, which resulted in the issuance of a violation of probation ("VOP") warrant for his arrest in June 2011. (*Id.*)

Prior to December 1, 2011, the FBI and Florida Department of Law Enforcement ("FDLE") were jointly investigating violent gang activity and reliable threats of armed takeover-style bank robberies, including taking hostages. (ECF No. 48, Ex. A, ¶ 6 ("Davis Aff.").) During the course of the joint operation, the Tallahassee Police Department ("TPD") obtained information from a confidential informant ("CI") that Plaintiff was the armed and dangerous person who was responsible for several of the armed bank robberies and homes invasions in a nearby county. (Compl. at 7; ECF No. 44-2 at 175, ln. 24–25, 176, ln. 1–8 ("Sanford Tr."); Davis Aff. ¶ 6.)[4] The CI

---

[3] Consequently, the facts asserted by Plaintiff upon which the undersigned will rely upon for purposes of this Report and Recommendation are contained within Plaintiff's sworn second amended complaint, ECF No. 9.

[4] Citations to page numbers for "Sanford Tr." are the transcript page numbers located in the upper right-hand corner of the transcript page.

indicated that she was Plaintiff's girlfriend. (Davis Aff. ¶ 6.) At that point,

they had been dating for almost four years. (ECF No. 44-1 at 344, ln. 8–11

("Pl. Tr.").)[5] According to Plaintiff, however, the TPD did not adequately

investigate the tip and merely assumed that the tip was credible. (Compl.

at 7.)

On December 1, 2011, the FDLE contacted TPD's Gang Response

Unit was contacted for assistance in locating and arresting Plaintiff. (Davis

Aff. ¶ 5.) At the time, Sergeant Davis was a Sergeant with the TPD and

supervisor of the TPD's Gang Response Unit. (*Id.* ¶ 2.) During FDLE's

operating briefing, Sergeant Davis learned about the joint operation and

the CI's tip. (*Id.* ¶ 6.) Sergeant Davis also learned that Plaintiff had been

identified as the second in command of a Gadsden County gang known as

the "Weedside Boys." (*Id.*) Further, Sergeant Davis learned that Plaintiff

aspired to become the leader of the gang and was using violence to assert

his dominance, including pistol whipping gang members who opposed him.

(*Id.*) Plaintiff was always armed with a handgun, had access to at least two

different handguns, and had an extensive criminal history, including violent

felonies. (*Id.*) He also had been convicted previously of robbery and

---

[5] Citations to page numbers for "Pl. Tr." are the transcript page numbers located
in the upper right-hand corner of the transcript page.

kidnaping. (*Id.*) Despite the joint task force's efforts prior to December 1, 2011, the task force had been unsuccessful in locating Plaintiff. (*Id.*) Sergeant Davis was asked to help develop an operations plan to effectuate Plaintiff's arrest that night. (*Id.* ¶ 7.) FBI Special Agent Sanford was also present to assist the TPD in effectuating Plaintiff's arrest. (Sanford Tr. at 132, ln. 13–14.)

Plaintiff and his girlfriend planned to meet that night. (Davis Aff. ¶¶ 5, 8; Pl. Tr. at 343, ln. 24–25, 344, ln. 1–20.) Sergeant Davis says they were supposed to meet at the Southside Shopping Plaza, but Plaintiff changed the plan to meet at an apartment complex on South Meridian Street. (Davis Aff. ¶¶ 9, 11–12.) Plaintiff, however, says they were supposed to meet at the Meridian Walk Apartments. (Pl. Tr. at 344, ln. 14–20.) Plaintiff was aware police were looking for him because he had violated the terms of his probation. (*Id.* at 345, ln. 15–17, 354, ln. 23–24.) He also suspected his girlfriend was setting him up by aiding law enforcement in Plaintiff's arrest. (*Id.* at 344, ln. 21–25, 345, ln. 11–18.) At the time, Plaintiff also had a concealed firearm in his pocket with an altered serial number. (*Id.* at 345, ln. 16, 351, ln. 1–10.) Thus, Plaintiff changed the plan to meet in Harvey's parking lot so he would be able to get away from Meridian Walk Apartments and head to a different apartment complex instead of meeting

up with his girlfriend. (*Id.* at 345, ln. 18–21.)

Sometime around 11:00 p.m., Sergeant Davis arrived in position where he could observe the apartment complex and observed an individual matching Plaintiff's description, dressed in all red, exit from one of the apartment complex's units. (Compl. at 7; Davis Aff. ¶ 13.) The individual began walking in the direction of Sergeant Davis' location, during which, the CI identified Plaintiff as the individual they were looking for. (Davis Aff. ¶¶ 13, 15.)

After the CI's identification, the TPD and FBI arrived on-scene in two unmarked vehicles and observed Plaintiff walking on the sidewalk. (*Id.* ¶¶ 17, 19.) Officer Gorham, dressed in a police uniform, was in one of the unmarked vehicles. (Davis Aff. ¶¶ 17, 19, 28; Compl. at 7.) Agent Sanford, wearing a dark vest with "FBI" in large light colored letters on the front, was driving the other unmarked vehicle. (Davis Aff. ¶¶ 17, 19, 29; Compl. at 7.) Officer Gorham's vehicle pulled in front of Plaintiff. (Davis Aff. ¶¶ 17, 19; Compl. at 7.) At the same time, Agent Sanford approached Plaintiff from behind. (*Id.*)

According to Agent Sanford and Sergeant Davis, as Officer Gorham's car pulled in front of Plaintiff, Plaintiff got into a fighting stance, pulled his gun out with two hands, and pointed the gun at Officer Gorham.

(Sanford Tr. at 138, ln. 2–9; Davis Aff. ¶ 18.) Agent Sanford started yelling that Plaintiff had a gun. (Sanford Tr. at 141, ln. 10.) Sergeant Davis says he also heard someone say over the radio that Plaintiff had a gun. (Davis Aff. ¶ 18.) As Agent Sanford's vehicle approached Plaintiff from behind, Plaintiff turned around toward Agent Sanford. (Sanford Tr. at 142, ln. 4–21; Davis Aff. ¶ 20.) Agent Sanford says that as he turned around, Plaintiff also turned his gun toward Agent Sanford. (Sanford Tr. at 142, ln. 22–23.)

At that point, Plaintiff began running toward Agent Sanford's vehicle and in the direction of Sergeant Davis' position. (Sanford Tr. at 143, ln. 5–23; Davis Aff. ¶ 20.) Agent Sanford, who had not even put his vehicle in park yet, jumped out of his vehicle, drew his gun and crouched behind the door in fear for his life. (Sanford Tr. at 142, ln. 8–25, 143, ln. 1–25, 144, ln. 1–4, 147 ln. 3–12.) As Plaintiff cleared Agent Sanford's doorjamb, seeing that Plaintiff still had the gun in his hands, Agent Sanford shot at Plaintiff twice. (*Id.* at 143, ln. 19–25; 145, ln. 1.) From where Sergeant Davis was located, he heard at least two gun shots and saw what he believed was a "muzzle flash" from Plaintiff's gun. (Davis Aff. ¶ 21.) Thus, it appeared to Sergeant Davis that Plaintiff and Agent Sanford had fired at each other. (*Id.*)

Plaintiff's version of events, as asserted in the complaint, are slightly

different. According to Plaintiff, Officer Gorham jumped out of his vehicle in front of Plaintiff with his gun drawn and pointed at Plaintiff. (Compl. at 7.) Officer Gorham did not identify himself as a law enforcement officer. (*Id.*) Plaintiff says that the area is well known for armed robberies and murders so he feared for his life. (*Id.*) Thus, he turned and started running away. (*Id.*) As he ran past Agent Sanford, without identifying himself as a law enforcement officer, Agent Sanford fired at Plaintiff, hitting him in the back of his left arm. (*Id.*)

At trial, however, Plaintiff's testimony differed greatly from the assertions in his complaint. Plaintiff testified that he was sending text messages on his Play Station phone, which required him to hold the phone with two hands, while he was walking down the street. (Pl. Tr. at 346, ln. 1–2, 363, ln. 3–1, 378, ln. 5–11.) Thus, his head was down and he was too distracted to notice the first vehicle pull in front of him. (Pl. Tr. at 363, ln. 3–1, 378, ln. 5–11.) As Agent Sanford's vehicle approached Plaintiff from behind, Plaintiff turned around toward Agent Sanford, shocked by the sudden approach of the vehicle. (Pl. Tr. at 364, ln. 16–20, 379, ln. 13–16.) Plaintiff assumed the people in the unmarked vehicles were law enforcement officers. (*Id.* at 365, ln. 10–11.) An officer (Agent Sanford) jumped out of his car with his gun drawn and told Plaintiff to get on the

ground. (Pl. Tr. at 346, ln. 8–10.) Plaintiff took off running and got shot in the arm. (*Id.*, ln. 10–12.) Plaintiff was still in possession of the firearm when Agent Sanford shot Plaintiff. (Pl. Tr. at 368, ln. 13–15.)

Despite getting shot by Agent Sanford, Plaintiff continued running. (Davis Aff. ¶ 22; Sanford Tr. at 146, ln. 20–22; Pl. Tr. at 12–24; Compl. at 7.) After Agent Sanford fired two shots at Plaintiff, Agent Sanford jumped back into his vehicle, which had rolled approximately ten feet, to put it in park. (Sanford Tr. at 147, ln. 12.) While Plaintiff was running, Sergeant Davis could see a black outline of a gun in Plaintiff's hand. (Davis Aff. ¶ 22.) Sergeant Davis intended on firing at Plaintiff then, but decided to wait because Officer Gorham and another officer were behind Plaintiff and in Sergeant Davis' line of fire. (*Id.*) Plaintiff ran across the street and began running directly toward Sergeant Davis. (*Id.* ¶ 23.) Other officers were yelling "police, stop," but Plaintiff did not obey their commands. (Davis Aff. ¶ 30.)

Plaintiff says he took the gun out of his jacket pocket once he made it to the sidewalk. (Pl. Tr. at 346, ln. 13–24.) Plaintiff got rid of the gun, and kept running toward Sergeant Davis. (*Id.*; Davis Aff. ¶ 30.) Pl. Tr. at 346, ln. 13–24.) Plaintiff says he still had his cell phone in his left hand while he got rid of the gun. (Pl. Tr. at 382, ln. 5–19.) Several seconds later, Sergeant

Davis, in fear for his life after seeing what he believed to be Plaintiff shoot at Agent Sanford, fired two shots at Plaintiff. (Davis Aff. ¶ 24.) Sergeant Davis did not identify himself to Plaintiff as law enforcement before shooting Plaintiff. (Compl. at 7.) One of the shots hit Plaintiff in the left cheek. (*Id.*; Compl. at 7; Pl. Tr. at 346, ln. 24–25.)

After being shot by Sergeant Davis, Plaintiff collapsed onto the ground. (*Id.*) Defendants and other officers surrounded Plaintiff. (Davis Aff. ¶ 26.) Sergeant Davis believed Plaintiff was still armed and ordered Plaintiff to show his hands. (*Id.*) Plaintiff did not comply and was placed in handcuffs. (*Id.*) Plaintiff pleaded for someone to call for medical help because he had been shot. (Compl. at 7.) One of the Defendants said, "oh now you're worried about dying. You dumb ass nigger, you should not have tried to run away from us. Just sit there and shut the f[uc]k up." (*Id.*)

Emergency medical services were called and Plaintiff was taken to Tallahassee Memorial Hospital for treatment. (*Id.*) Plaintiff says the wounds from Agent Sanford's shot and Sergeant Davis' shot showed that Plaintiff was shot from behind while running away. (*Id.*) Plaintiff has nerve damage in his left hand and lost the use of his left hand as a result of Agent Sanford's shot. (*Id.* at 8.) He also sustained facial injuries from Sergeant Davis' shot, including the loss of teeth and a tongue injury, which has

resulted in a speech impediment. (*Id.*)

Based on the events that took place during the December 1, 2011 arrest, Plaintiff was subsequently charged with and convicted in Florida state court of: (1) Two counts of Aggravated Assault on a Law Enforcement Officer with a Firearm, in violation of Fla. Stat. §§ 775.087, 784.07(2)(c); (2) Carrying a Concealed Firearm, in violation of Fla. Stat. § 790.01(2); (3) Possession of a Firearm with an Altered Serial Number, in violation of Fla. Stat. § 790.27(2); (4) Resisting a Law Enforcement Officer with Violence, in violation of Fla. Stat. § 843.01; and (5) Possession of a Firearm by a Convicted Felon, in violation of Fla. Stat. § 790.23(1)(a). (ECF No. 44-3 ("Fla. Judgment").[6]

### III.  SUMMARY JUDGEMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on*

---

[6] *Florida v. Turner*, No. 2011 CF 3784 A (Fla. 2d Cir. Ct. Dec. 7, 2011).

*Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988). But,

"when opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a

court should not adopt that version of the facts for purposes of ruling on a

motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284

(11th Cir. 2013) (internal quotations and citations omitted); *see also*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (to defeat

summary judgment "there must be evidence on which the jury could

reasonably find for the plaintiff") "The nonmovant need not be given the

benefit of every inference but only of every reasonable inference." *Brown v.*

*City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988) ("The

summary judgment standard requires that we resolve all reasonable

doubts in favor of the non-moving party, but it does not require us to

resolve all doubts in such a manner.").

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317

(1986), the moving party bears the initial burden of establishing the

nonexistence of a triable issue of fact. If the movant is successful on this

score, the burden of production shifts to the non-moving party who must

then come forward with "sufficient evidence of every element that he or she

must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).

The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## IV.  <u>DISCUSSION</u>

Plaintiff alleges Officer Gorham violated Plaintiff's constitutional rights because he contributed to Agent Sanford's and Sergeant Davis' use of excessive force in violation of the Fourth Amendment. (Compl. at 8–9.) Specifically, Plaintiff claims he ran from Defendants because he did not know they were law enforcement officers. Plaintiff says if Officer Gorham had identified himself as a law enforcement officer at the outset, Plaintiff would have immediately surrendered and would not have run. And had he not run, he would not have been shot. (*Id.*)

Officer Gorham argues, however, that: (1) Judicial estoppel precludes Plaintiff from contradicting his sworn testimony given in his underlying criminal proceeding in order to prove his claim against Officer

Gorham; (2) The undisputed facts demonstrate that Officer Gorham did not violate Plaintiff's constitutional rights; (3) Qualified immunity shields Officer Gorham from individual liability; and (4) Plaintiff's claims against Agent Sanford and Sergeant Davis are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).[7] (ECF No. 62.)

## 1.  Judicial Estoppel

Under the doctrine of judicial estoppel, a party is precluded from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002). The Supreme Court has stated, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)); *see also*

---

[7] Under *Heck,* state prisoners are barred from pursuing § 1983 actions that, if successful, would necessarily imply the validity of a plaintiff's conviction. 512 U.S. at 477. In considering whether a § 1983 claim is *Heck*-barred, the Court must determine whether a plaintiff's factual allegations, if proven, would necessarily undermine the validity of the plaintiff's conviction. *See Edwards v. Balisok*, 520 U.S. 642, 646–48 (1997). If the factual basis of the plaintiff's civil case is "inconsistent with [his] convictions having been valid, *Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003).

*McKinnon v. Blue Cross & Blue Shield of Ala.*, 935 F.2d 1187, 1192 (11th

Cir. 1991) ("Judicial estoppel is applied to the calculated assertion of

divergent sworn positions."). "Judicial estoppel is an equitable concept

intended to prevent the perversion of the judicial process," and "protect the

integrity of the judicial process by prohibiting parties from deliberately

changing positions according to the exigencies of the moment." *Id.* (citing

*New Hampshire*, 532 U.S. at 749–50; 18 James Wm. Moore et al., Moore's

Fed. Practice § 134.30, p. 134–62 (3d ed. 2000)).

The court should consider several factors in determining whether

judicial estoppel should be applied: (1) whether the present position is

clearly inconsistent with the party's prior position; (2) whether the party

succeeded in persuading a court to accept that party's earlier position; and

(3) whether the party seeking to assert an inconsistent position would

derive an unfair advantage on the opposing party if not estopped. *New

Hampshire*, 532 U.S. at 750–51 (citations omitted). The Eleventh Circuit

has outlined two primary factors to consider in applying the bar of judicial

estoppel. *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th

Cir. 2010) (citing *Burnes*, 291 F.3d at 1282). "First, it must be shown that

the allegedly inconsistent positions were made under oath in a prior

proceeding. Second, such inconsistencies must be shown to have been

calculated to make a mockery of the judicial system." *Id.*

The Court declines to apply the doctrine of judicial estoppel in this case. Plaintiff's trial testimony does contradict the assertions made in his complaint in this case regarding Officer Gorham. In his criminal trial he testified that he did not even see Officer Gorham before he started running. Here Plaintiff says Officer Gorham jumped out of the vehicle with his gun drawn and pointed at Plaintiff, that Plaintiff did not know Officer Gorham was a law enforcement officer, and that Plaintiff started running because he was scared. Officer Gorham, however, overlooks an important factor for the Court to consider in determining whether judicial estoppel applies: whether Plaintiff succeeded in persuading a court to accept his prior testimony.

It is clear that Plaintiff did not persuade a court to accept his prior testimony because he was convicted on all five counts. This renders little threat of inconsistent court determinations and little threat to judicial integrity. *See New Hampshire*, 532 U.S. at 750–51 ("Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' . . . and thus poses little threat to judicial integrity."); *Teledyne Indus., Inc. v. Nat. Labor Relations Bd.*, 911 F.2d 1214, 1218 (6th Cir. 1990) ("Judicial estoppel does not bar a party from

contradicting itself, but from contradicting a court's determination that was based on that party's position."); *Lee v. Lucas*, No. 1:10-CV-00151, 2011 WL 5361509, at *8 (N.D. Ohio Oct. 31, 2011) (judicial estoppel did not bar plaintiff's claims because although plaintiff testified at defendant's criminal trial that defendant was guilty, defendant was acquitted so plaintiff had not succeeded in persuading the court in defendant's trial to accept plaintiff's testimony). Accordingly, the doctrine of judicial estoppel does not bar Plaintiff's claims against Officer Gorham.

## 2.  Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies to a government official performing a discretionary function, a court must consider two factors: (1) whether the evidence shows that the official's conduct violated a constitutional right; and (2) whether the right was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009). A court has the discretion to address the two prongs in either order. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The undisputed evidence here demonstrates that Officer Gorham was a government official acting within his discretionary authority. "Discretionary authority" includes all actions by a government official that "were undertaken pursuant to the performance of his duties," and were "within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). A fundamental duty of a law enforcement officer is to make arrests. *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 740 (11th Cir. 2010) (discussing a law enforcement officer's right to arrest); *Williams v. United States*, 314 F. App'x 253, 257 (11th Cir. 2009) ("it is the mandatory duty of law enforcement agents to enforce the law").

Plaintiff does not dispute that Officer Gorham was a law enforcement officer assisting in effectuating Plaintiff's arrest. Thus, Officer Gorham was a government official undertaking actions pursuant to the performance of his duty to arrest Plaintiff. The question therefore becomes whether Officer Gorham violated Plaintiff's clearly established constitutional rights of which a reasonable person would have known.

The Fourth Amendment's prohibition on unreasonable searches and seizures "encompasses the right to be free from excessive force during the course of a criminal apprehension." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009); *see also* U.S. Const. amend. IV. A police officer's use of force violates the Fourth Amendment if it is objectively unreasonable in light of the circumstances. *Graham v. Connor*, 490 U.S. 386, 395–97 (1989). The test of reasonableness under the Fourth Amendment,

> requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 396.; *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993).

> [T]he Supreme Court [has] held that a police officer may use deadly force to seize a fleeing felony suspect when the officer: (1) "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others" or "that he has committed a crime involving the infliction or threatened infliction of serious physical harm," (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible.

*Vaughan v. Cox*, 343 F.3d 1323, 1329–30 (11th Cir. 2003) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985)). There is, however, no "magical on/off switch that triggers rigid preconditions" for when an officer

may use deadly force. *Scott v. Harris*, 550 U.S. 372, 382 (2007). Each situation must be analyzed under the Fourth Amendment's "reasonableness" test. *Id.*; *Graham*, 490 U.S. at 388.

Furthermore, an officer who fails to intervene when another officer uses excessive force, and was in a position to intervene, can be liable for excessive force. *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407–08 (11th Cir. 1998)); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.").

Nonetheless, "[a]n officer will be entitled to qualified immunity if his actions were objectively reasonable, that is, if an objectively reasonable officer in the same situation could have believed that the force used was not excessive." *Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Courts view the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and

rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force,' . . . and to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Saucier*, 533 U.S. at 206 (internal quotation omitted).

> Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation. It is important to emphasize that this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."

*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quotation omitted).

Viewing the evidence in the light most favorable to Plaintiff, Officer Gorham did not violate a clearly established right of which a reasonable person would have known. As an initial matter, it is undisputed that Officer Gorham did not shoot at Plaintiff or have any physical contact with Plaintiff during the arrest. Thus, the only theory under which Officer Gorham could be liable for excessive force is by failing to protect Plaintiff from another officer's use of excessive force.

The problem is that neither Agent Sanford nor Sergeant Davis used

excessive force in arresting Plaintiff. *See* ECF Nos. 64, 69 (determining that even viewing the evidence in the light most favorable to Plaintiff, neither Agent Sanford's nor Sergeant Davis' use of force was excessive in violation of the Fourth Amendment). It is axiomatic that Officer Gorham cannot be liable for failing to intervene in another officer's use of excessive force when there was no use of excessive force. Officer Gorham is therefore entitled to qualified immunity from Plaintiff's excessive force claim.[8]

## V. <u>RECOMMENDATION</u>

In light of the foregoing, it is respectfully **RECOMMENDED** that:

---

[8] Although Officer Gorham also argues that Plaintiff's excessive force claims are *Heck*-barred, Plaintiff merely adopts the arguments asserted by Agent Sanford and Sergeant Davis in their respective dispositive motions. (ECF No. 62 at 14.) But, as the Court previously determined, only Plaintiff's excessive force claim against Agent Sanford was *Heck*-barred because, if proven, the claim would undermine the validity of his conviction for aggravated assault on a law enforcement officer with a firearm in violation of Fla. Stat. §§ 775.087, 784.07(2)(c). *See* ECF Nos. 64, 69. Plaintiff's excessive force claim against Sergeant Davis was not *Heck*-barred because, if proven, the claim would not undermine the validity of any of Plaintiff's convictions. *Id.* Neither Agent Sanford's nor Sergeant Davis' motion for summary judgment presents an argument as to why Plaintiff's excessive force claim against Officer Gorham is *Heck*-barred. Similarly, the instant motion presents no argument as to why the specific excessive force (or failure to intervene) claim against Officer Gorham would undermine the validity of any of Plaintiff's convictions. Nonetheless, even assuming Officer Gorham failed to announce at the outset of Plaintiff's arrest that he was a law enforcement officer and somehow failed to intervene, this would not necessarily undermine the validity of any of Plaintiff's convictions for the same reasons that Plaintiff's excessive force claim against Sergeant Davis, if proven, would not undermine the validity of any of Plaintiff's convictions. *See* ECF No. 64 at 20–23. Nonetheless, Officer Gorham is entitled to judgment as a matter of law because even viewing the evidence in the light most favorable to Plaintiff, Officer Gorham is entitled to qualified immunity from Plaintiff's excessive force claim.

Defendant Gorham's motion for summary judgment, ECF No. 62, should be **GRANTED.**

**IN CHAMBERS** this 16th day of March, 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**